## No. 1924—SUCCESSION OF PETER WILLIAMS.

The creditors or heirs of an estate may proceed by rule to compel the curator to pay the twenty per cent. interest per annum on the amount of the funds drawn from the bank by him without any order or authority from the court, but they can not couple with such rule a demand that the delinquent curator shall be dismissed from office. Acts of 1855, §2, No. 90, page 78.

Proceedings to remove a delinquent curator from office must be commenced by petition and citation. C. P. 1018.

In a proceeding under this statute to recover the twenty per cent. interest per annum on the amount withdrawn from the bank by the curator, besides any special damage suffered, judgment can not be rendered against him and his sureties in solido for the amount so withdrawn.

APPEAL from Second District Court, parish of Orleans. Thomas, J. Walter H. Rogers, and Budd & Grover, for appellants. Q. A. Thomas, for absent heirs, appellees.

HOWELL, J. In pursuance of an order of court, the curator of this succession filed an account, to several items of which, the attorney for absent heirs, made opposition, and pending the same took a rule on the curator to produce his bank book on the trial of the opposition, and show cause why the penalties of the act of twelfth of March, 1855, should not be inflicted on him and his securities. Judgment was rendered, sustaining the opposition in part, and making the rule absolute, dismissing the curator from office, and condemning him and his securities in solido to pay a certain sum of money, drawn by him out of bank, without authority, from which they appealed.

The attorney for absent heirs suggests that, as the clerk's certificate shows that several documents are missing, the court should dismiss the appeal, and cites several authorities to support his suggestion.

It appears, however, that these missing documents were not offered in evidence in the proceedings resulting in the judgment appealed from, and that all the documents and testimony adduced in said proceedings are in the transcript. There is, therefore, no ground for dismissing the appeal on this suggestion of the attorney.

The items of the account, the opposition to which was sustained, are three sums in favor of the curator himself—one of $910 for services as agent of the deceased, one of $828 for three years' board of the deceased, both of which were rejected; and one of $227, as commissions on the amount of the inventory, which was reduced to $68 41 as commissions on the sum distributed.

He contends that the first and second items are established by a former account filed by him, and which, he alleges, was homologated by judgment of the court, and is therefore binding on the estate. In support of which he cites articles 1056, 1058, 1168, 1169, 1172 C. C.; articles 539, 548 C. P.; 3 An. 383; 14 An. 706; 8 R. 121; 2 R. 54.

The alleged judgment of homologation is not in evidence, and no proof of any kind was introduced to establish the verity of said claims. But if we are justified in referring to all the mortuary proceedings which appear in the transcript, we find quite enough to sustain the judge a quo in disregarding said account and its pretended homologation as proof of the curator's claims against the succession. It was filed, along with the inventory, on the day before letters of curatorship were issued to the curator, and in the accompanying petition he prayed for an order to draw out of bank the sum of $968 88, being the amount of cash to the credit of the succession, to pay privileged debts as far as possible, and that after service of the petition, account and inventory on the attorney for absent heirs, and all due legal proceedings the account and inventory be homologated and approved. The suggested service does not appear to have been made, and the only order granted was one directing the account to be advertised. Ten or twelve days thereafter a petition was filed, and an order indorsed thereon "that said account be approved and homologated so far as not opposed." On the same day a petition was filed asking for and obtaining an order to sell certain property to pay the debts of the succession. It will be observed that the curator has not, so far, asked for an order or authority to pay any specified debts, or in accordance with any account presented by him. Some six months after the above sale was ordered, the attorney for absent heirs took a rule to compel the curator to file an account of administration, which resulted in the account now under consideration, and which embraces all the liabilities and assets which were set forth in the first, as well as others, but no allusion is

made in the account or petition accompanying it, to any former account or payments. Whatever effect may result from the filing of the first statement of liabilities and assets, and the order approving it, as to other persons, the curator can not invoke them, under the circumstances, as establishing the verity of his own claims against the succession, so as to preclude opposition to them, when found in a subsequent account, which he asked to be advertised, approved and homologated. The filing of the first, at the time and in the manner it was done, was irregular, ( C. P. 988; C. C. 1167, 1168), and nowhere does an order of the court appear, directing him to draw money from the bank or authorizing him to pay any debts (C. C. 1177) prior to the filing of the account which is now successfully opposed by the attorney of the absent heirs.

The commissions were properly reduced, as the administration seems not to be closed. C. C. 1187–8. The bank books show that the curator deposited in and drew from the bank several thousand dollars, for which withdrawal, as above stated, he produces no authority from the court. This, by the express terms of the act of 1855, pages 78, section 2, makes him, with his securities, liable to pay twenty per cent. interest per annum on the amount so withdrawn, besides any special damage suffered, and to be dismissed from office; but does not warrant a judgment against him and his securities *in solido* for the amount withdrawn. Nor does the section under which the rule was taken, change the mode or form of proceeding by which the delinquent curator is to be removed, which must be done by petition and citation. C. P. 1018.

Conceding that the act of 1837, page 95, section 3, implied the right to decree a dismissal on the rule therein authorized, section 2 of the act of 1855, on the same subject, differs in this respect from said act, and repeals all laws on the same subject, except what is in the two Codes. By articles 1019 C. P. and 1151 C. C., it becomes the duty of the judge, when a fact or reason justifying dismissal comes to his knowledge, to direct the attorney for absent heirs to institute suit for that purpose.

We conclude that the judgment of the court *a qua*, on the opposition, is correct, but that on the rule, dismissing the curator and condemning him and his securities to pay $1899 89, is erroneous.

It is therefore ordered that so much of the judgment appealed from, as dismisses P. Bourke from the office of curator, and condemns him and his securities *in solido* to pay $1899 89 to this estate, be reversed, without prejudice to the right of action against them or either of them in proper form; and that in other respects the said judgment be affirmed, costs of appeal to be paid by the succession.